IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-511

Filed: 7 April 2020

Alamance County, No. 18CVD1960

WANDA GRAHAM and GEORGE L. GRAHAM, Plaintiffs,

v.

STEPHANIE JONES, Defendant.

Appeal by Defendant from order entered 16 November 2018 by Judge Larry D. Brown, Jr., in Alamance County District Court. Heard in the Court of Appeals 4 December 2019.

*Fairman Family Law, by Kelly Fairman, for Plaintiffs-Appellees.*

*North Carolina Central University School of Law Clinical Legal Education Program, by Nakia C. Davis, Esq., for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals a custody order granting her full physical and legal custody, care, and control of her minor child but granting the minor child's grandparents visitation. Defendant argues that the trial court erred by proceeding with a best interest of the child analysis after granting Defendant full physical and legal custody, care, and control of the child and, based on this analysis, erred by granting Plaintiffs visitation with the child. For the reasons stated below, we reverse the trial court's order and dismiss the custody action.

## I. Factual Background

Wanda Graham and George L. Graham ("Plaintiffs") are the paternal grandparents[1] of Abby.[2] Abby was born on 8 February 2018 to Plaintiffs' son, Christopher Tice Butler, Jr. ("Christopher"), and Stephanie Jones ("Defendant"). Christopher, Defendant, and Abby lived with Plaintiffs in Snow Camp, North Carolina from the date of Abby's birth until July 2018. In July and August 2018, Christopher, Defendant, and Abby lived together in a rental apartment in North Carolina with Defendant's two other minor children.

By Domestic Violence Protective Order ("DVPO") entered 13 August 2018, Defendant was found to have attempted to cause Christopher bodily injury on 6 August 2018 by slapping him while he was holding Abby. The DVPO prohibited Defendant from having contact with Christopher, granted Christopher temporary custody of Abby, and granted Defendant visitation with Abby for one hour per week. The DVPO was to expire by its terms on 13 August 2019. Christopher and Abby moved back into the Plaintiffs' home. Defendant moved to Texas and did not exercise her visitation with Abby.

On 30 September 2018, Christopher passed away in an automobile accident. Abby remained in Plaintiffs' home. On 2 October 2018, Plaintiffs filed a complaint

---

[1] George L. Graham is Abby's paternal step-grandfather.
[2] We use a pseudonym to protect the identity of the minor child. *See* N.C. R. App. P. 3.1(b).

pursuant to N.C. Gen. Stat. § 50-13.1(a) seeking "full legal custody of the minor child" and "primary physical custody of the minor child on an emergency, temporary, and permanent basis." Plaintiffs alleged, inter alia, "Defendant stated she will be in the jurisdiction on Thursday, October 4, 2018, to retrieve the child and remove her from the jurisdiction"; "Defendant abandoned the minor child and moved to Floresville, TX in August 2018 with no notice and has had minimal contact with Plaintiff[s] regarding the welfare of the minor child"; "Defendant suffers from severe depression and bi-polar disorder, for which she does not take her prescribed medication"; "Defendant also cuts herself as a side effect of her mental disorders"; "Defendant has been hospitalized in the psychiatric unit at Alamance Regional Medical Center due to her mental disorders"; and "Defendant has acted inconsistently with her constitutionally-protected status and custody should be granted to the Plaintiffs." On 3 October 2018, the trial court entered an Ex Parte Order granting Plaintiffs custody of Abby, prohibiting Defendant from removing Abby from Plaintiffs' custody, and setting a temporary custody hearing for 24 October 2018. On 15 October 2018, Defendant filed an answer to the complaint.

On 24 October 2018, the parties appeared for the temporary custody hearing in Alamance County District Court. After the hearing, the trial court took the matter under advisement. On 26 October 2018, the trial court gave an oral ruling from the bench. The oral ruling was reduced to writing and entered on 16 November 2018

("Custody Order"). In the Custody Order, the trial court made sixty-three findings of

fact and, based upon those findings, concluded, inter alia:

> 6. That the court is not considering the best interest of the minor child standard at this posture of the case.
>
> 7. Defendant is not an unfit parent.
>
> 8. Defendant has not abandoned her daughter.
>
> 9. That the minor child has not been neglected by Defendant.
>
> 10. That Defendant has not acted in a manner inconsistent with her constitutionally protected right as a parent.
>
> 11. That Defendant is a fit and proper person to have full physical and legal custody of the minor child.
>
> 12. That it is in the best interest of the minor child to place full physical and legal custody with Defendant, Stephanie Jones.
>
> 13. That Plaintiffs are fit and proper person[s] to have reasonable visitation with the minor child.
>
> 14. That the Court has the authority to grant Plaintiffs reasonable visitation.
>
> 15. That it is in the best interest of the minor child to have reasonable visitation with Plaintiffs, Wanda Graham and George Graham.

The trial court thus ordered that Defendant have "full physical, legal, custody

care and control" of Abby, but that Plaintiffs should have visitation with Abby, who

was approximately nine months old at the time, as follows: (a) On the third weekend

of every month Plaintiffs have unsupervised visitation from Friday at 6 a.m. to

Monday at 6 a.m. The parties shall exchange the child at a neutral location half–way

between Plaintiffs' home in North Carolina and Defendant's home, which was in

Texas at that time; (b) Plaintiffs are permitted to video chat with Abby four times per week, every Monday, Thursday, Friday, and Sunday, from 6:00 p.m. to 7:00 p.m.; and (c) Plaintiffs have unsupervised visitation with Abby for a period of two uninterrupted weeks during the summer. "The weeks shall be defined as 6:00[]a.m. on Monday to 6:00[]a.m. on Monday (14 days)."

On 13 December 2018, Defendant filed notice of appeal.

## II. Discussion

Defendant argues on appeal that the Custody Order is immediately appealable as it is a permanent order. In the alternative, Defendant argues that the Custody Order is immediately appealable as it affects a substantial right. Defendant further argues that the trial court erred by proceeding with a best interest analysis after granting Defendant full physical and legal custody, care, and control of Abby, and erred by granting Plaintiffs visitation with Abby.

*A. Immediate Appellate Review*

We first determine whether this appeal is properly before us. Defendant argues that the Custody Order is immediately appealable because it (1) is a permanent custody order and (2) affects a substantial right.

*1. Permanent Custody Order*

A party is generally not entitled to appeal from a temporary custody order while a permanent custody order is immediately appealable. *Brown v. Swarn*, 257

N.C. App. 418, 422-23, 810 S.E.2d 237, 240 (2018) (citation omitted). "[A] temporary or interlocutory custody order is one that does not determine the issues, but directs some further proceeding preliminary to a final decree." *Smith v. Barbour,* 195 N.C. App. 244, 250, 671 S.E.2d 578, 583 (2009) (internal quotation marks and citation omitted). "[W]hether an order is temporary or permanent in nature is a question of law, reviewed on appeal de novo." *Id.* at 249, 671 S.E.2d at 582 (citation omitted).

A "temporary custody order[] establish[es] a party's right to custody of a child pending the resolution of a claim for permanent custody—that is, pending the issuance of a permanent custody order." *Regan v. Smith,* 131 N.C. App. 851, 852–53, 509 S.E.2d 452, 454 (1998) (citations omitted). In contrast, "[a] permanent custody order establishes a party's present right to custody of a child and that party's right to retain custody indefinitely. . . ." *Id.* "Generally, a child custody order is temporary if . . . '(1) it is entered without prejudice to either party, (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings [is] reasonably brief[,] or (3) the order does not determine all the issues.'" *Kanellos v. Kanellos*, 251 N.C. App. 149, 153, 795 S.E.2d 225, 229 (2016) (quoting *Senner v. Senner*, 161 N.C. App. 78, 81, 587 S.E.2d 675, 677 (2003)). If the order "does not meet any of these criteria, it is permanent." *Peters v. Pennington*, 210 N.C. App. 1, 14, 707 S.E.2d 724, 734 (2011) (citation omitted). "Further, it is the satisfaction of these criteria, or lack thereof, and not any designation by a district court of an order as

temporary or permanent which controls." *Kanellos*, 251 N.C. App. at 153, 795 S.E.2d at 229 (citations omitted).

### a. Prejudice

"An order is without prejudice if it is entered without loss of any rights; in a way that does not harm or cancel the legal rights or privileges of a party." *Marsh v. Marsh*, 816 S.E.2d 529, 532 (N.C. Ct. App. 2018) (quotation marks, brackets, and citation omitted). The Custody Order before us "granted full physical, legal, custody care and control" of Abby to Defendant, with visitation to Plaintiffs. Unlike the Ex Parte Order entered in this case which expressly stated, "This is a temporary order and not prejudicial to either party[,]"the Custody Order does not contain express language indicating that it was entered without prejudice to either party. *See, i.e., Senner*, 161 N.C. App. at 81, 587 S.E.2d at 677 (holding the custody order was entered "without prejudice" because it contained express language stating as such). Moreover, it is not clear from the plain language of the Custody Order that it was entered without the loss of rights, or otherwise prejudicial to the legal rights of either party. *See Marsh*, 816 S.E.2d at 532 ("Even though the trial court did not include express language in the order stating it was entered 'without prejudice,' it is clear from the plain language of the order that it was entered without the loss of rights, or otherwise prejudicial to the legal rights of either party."). To the contrary, the plain

language of the Custody Order indicates it was permanently adjudicating the parties' rights with respect to Abby's custody.

### b. *Reconvening Time*

The Custody Order does not state a reconvening time. *Kanellos*, 251 N.C. App. at 153, 795 S.E.2d at 229. Moreover, no language in the Custody Order indicates that any further reconvening time is contemplated. The Custody Order grants "full physical, legal, custody care and control" of Abby to Defendant and sets forth a visitation schedule for Plaintiffs for the indefinite future. Furthermore, the Custody Order encompasses future conduct, including "[t]hat the parties may mutually agree to additional visitation[,]" and that Defendant shall continue her mental health treatment and prescription medications.

### c. *Determination of Issues*

As the trial court found in the Custody Order, "the question in this matter is a question of whether the parent [Defendant] is unfit or acted in a manner that is inconsistent with her constitutionally protected right as a parent." The trial court made extensive findings of fact, addressing, inter alia, Defendant's mental health, drug addiction, ability to provide financial support for Abby, the nature of Abby's relationship with Plaintiffs, and whether Defendant was a fit and proper parent who had acted consistently with her constitutionally protected right as a parent.

Based upon these findings, the trial court concluded, inter alia:

7. Defendant is not an unfit parent.

8. Defendant has not abandoned her daughter.

9. That the minor child has not been neglected by Defendant.

10. That Defendant has not acted in a manner inconsistent with her constitutionally protected right as a parent.

11. That Defendant is a fit and proper person to have full physical and legal custody of the minor child.

12. That it is in the best interest of the minor child to place full physical and legal custody with Defendant, Stephanie Jones.

The trial court accordingly ordered that Defendant "be granted full physical, legal, custody care and control" of Abby. Thus, the Custody Order "determine[d] all the issues." *Kanellos*, 251 N.C. App. at 149, 795 S.E.2d at 229.

Plaintiffs argue that the Custody Order is temporary because, as in *Sood v. Sood*, 222 N.C. App. 807, 809, 732 S.E.2d 603, 606 (2012), it fails to determine a holiday visitation schedule for Abby. In *Sood*, the trial court's custody order granted joint legal custody of the minor child to both biological parents and specified a custodial schedule for the upcoming Christmas holiday and spring break, but did not resolve the holiday custodial schedule for the indefinite future. *Id.* at 809, 732 S.E.2d at 606. Based in part on the lack of a future holiday custodial schedule, this Court concluded the order was temporary.

In the present case, the Custody Order concluded that Defendant, Abby's biological mother, "has not acted in a manner inconsistent with her constitutionally protected right as a parent" and granted Defendant "full physical, legal, custody care

and control" of Abby. Thus, unlike the order in *Sood*, the Custody Order here granted Defendant full custody of Abby at all times, resolving the holiday custodial schedule for the indefinite future. The visitation schedule set forth in the Custody Order comprised the complete grant of visitation to Plaintiffs, Abby's grandparents, for the indefinite future.

Plaintiffs further argue that the Custody Order is temporary because it failed to analyze whether Plaintiffs had standing to bring this custody action. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005). Here, the trial court specifically concluded, "That this Court has subject matter jurisdiction to hear this matter." This conclusion necessarily encompasses the trial court's conclusion that Plaintiffs had standing to bring this custody action.[3]

---

[3] Had the trial court concluded that Plaintiffs lacked standing to bring this custody action, the trial court would have been required to dismiss the action. *See Chavez v. Wadlington*, 821 S.E.2d 289, 291 (N.C. Ct. App. 2018) (affirming the trial court's order dismissing plaintiff's complaint for lack of subject matter jurisdiction where plaintiff lacked standing as an "other person" pursuant to N.C. Gen. Stat. § 50-13.1(a) to seek custody of the minor children at issue).

We acknowledge that the Custody Order was issued as a result of a temporary custody hearing, and that the trial court decreed in the Ex Parte Order that a temporary order would be entered as a result of the temporary hearing. However, "[a] trial court's label of a custody order as 'temporary' is not dispositive[,]" *Sood*, 222 N.C. App. at 809, 732 S.E.2d at 606 (citation omitted), and precedent dictates that an order that does not meet any of the *Kanellos* criteria is permanent. *Peters*, 210 N.C. App. at 14, 707 S.E.2d at 734. As the Custody Order was not entered without prejudice to the parties, does not set a reconvening time for a subsequent hearing, and determines all of the issues before the trial court, the Custody Order is a final order. Defendant's appeal is therefore properly before this Court. N.C. Gen. Stat. § 7A-27(b)(2) (2019).

### 2. *Substantial Right*

In addition to the Custody Order being permanent, the Custody Order affects a substantial right and is thus immediately appealable.

> An interlocutory order may be immediately appealed in only two circumstances: (1) when the trial court, pursuant to N.C.R. Civ. P. 54(b), enters a final judgment as to one or more but fewer than all of the claims or parties and certifies that there is no just reason to delay the appeal; or (2) when the order deprives the appellant of a substantial right that would be lost absent appellate review prior to a final determination on the merits.

*High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 204 N.C. App. 55, 61, 693 S.E.2d 361, 366 (2010) (citation omitted). In the present case, the Custody Order was

not certified by the trial court pursuant to Rule 54(b). However, citing *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997), and *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994), Defendant asserts that the trial court's order awarding visitation rights to Plaintiffs implicated Defendant's constitutionally protected interest in the custody, care, and control of Abby.

In *Petersen*, our Supreme Court explicitly recognized "the strength of the right of natural parents as against others[.]" *Petersen*, 337 N.C. at 403, 445 S.E.2d at 904. *Petersen* also adopted precedent of this Court holding that "parents' paramount right to custody includes the right to control their children's associations[.]" *Id.* at 403, 445 S.E.2d at 904-05 (*quoting Acker v. Barnes*, 33 N.C. App. 750, 752, 236 S.E.2d 715, 716 (1977) ("So long as parents retain lawful custody of their minor children, they retain the prerogative to determine with whom their children shall associate.")). Our Supreme Court reiterated these principles in *Owenby v. Young*, 357 N.C. 142, 579 S.E.2d 264 (2003), in which it

> [n]ote[d] that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. This parental liberty interest is perhaps the oldest of the fundamental liberty interests the United States Supreme Court has recognized. This interest includes the right of parents to establish a home and to direct the upbringing and education of their children. Indeed, the protection of the family unit is guaranteed not only by the Due Process Clause, but also by the Equal Protection Clause of the Fourteenth Amendment and possibly by the Ninth Amendment. . . . The protected

> liberty interest . . . is based on a presumption that [parents]
> will act in the best interest of the child.

*Id.* at 144-45, 579 S.E.2d at 266 (internal quotation marks and citations omitted); *see also Troxel v. Granville*, 530 U.S. 57 (2000).

In *In re Adoption of Shuler*, 162 N.C. App. 328, 590 S.E.2d 458 (2004), the biological father of a minor child appealed the trial court's denial of his motion to dismiss a third-party petition to adopt the child. This Court held that, although the father's appeal was interlocutory, the trial court's order affected a substantial right because it "eliminate[d] the [father's] fundamental right . . . , as a parent, to make decisions concerning the care, custody, and control of [the child][.]" *Id.* at 330, 590 S.E.2d at 460 (internal quotation marks and citation omitted).

In the present case, we similarly conclude that the trial court's order directing Defendant to allow Plaintiffs access to and visitation with Abby affected Defendant's fundamental right to make decisions concerning the care, custody, and control of her child, including the child's association with third parties. Notwithstanding statutory provisions that permit grandparents to seek visitation rights in limited circumstances, this Court has explicitly held that "[a] grandparent is a third party to the parent-child relationship. Accordingly, the grandparent's rights to the care, custody[,] and control of the child are not constitutionally protected while the parent's rights are protected." *Eakett v. Eakett*, 157 N.C. App. 550, 554, 579 S.E.2d 486, 489 (2003). In this case, Defendant "enjoys a constitutional right to the care, custody, and

control of [her] child that [sprung] upon the death of [Christopher,] the custodial parent[,] to the exclusion of and superior to any interest held by a grandparent." *Rivera v. Matthews*, 824 S.E.2d 164, 169 (N.C. Ct. App. 2019). The trial court's order granting visitation to Plaintiffs therefore affected a substantial right, and Defendant's appeal is properly before us.

*B. Custody*

Defendant next argues that the trial court erred by engaging in a best interest analysis after granting Defendant full physical and legal custody, care, and control of Abby and by granting Plaintiffs visitation with Abby.

Four statutes address grandparent custody and visitation in North Carolina. Under N.C. Gen. Stat. § 50-13.1(a),

> Any parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided. . . . Unless a contrary intent is clear, the word "custody" shall be deemed to include custody or visitation or both.

N.C. Gen. Stat. § 50-13.1(a) (2019). While "[i]n certain contexts 'custody' and 'visitation' are synonymous[,] . . . it is clear that in the context of grandparents' rights to visitation, the two words do not mean the same thing." *McIntyre v. McIntyre*, 341 N.C. 629, 634, 461 S.E.2d 745, 749 (1995). Thus, "[a]lthough this broad statute describes general standing to seek custody or visitation, our Supreme Court has applied canons of statutory construction to determine the statute only grants

grandparents standing for custody, not visitation." *Wellons v. White*, 229 N.C. App. 164, 174, 748 S.E.2d 709, 717 (2013) (citing *McIntyre*, 341 N.C. at 635, 461 S.E.2d at 750) (other citation omitted). A grandparent initiating a proceeding for custody under N.C. Gen. Stat. § 50-13.1(a) must allege that the parent is unfit or has acted in a manner inconsistent with her parental status. *See Eakett*, 157 N.C. App. at 553, 579 S.E.2d at 489 (citations omitted); *Yurek v. Shaffer*, 198 N.C. App. 67, 75, 678 S.E.2d 738, 744 (2009).

The following three statutes ("grandparent visitation statutes") "provide grandparents with the right to seek 'visitation' only in certain clearly specified situations[,]" *McIntyre*, 341 N.C. at 635, 461 S.E.2d at 749-50: (1) N.C. Gen. Stat. § 50-13.2(b1) allows grandparents to be granted visitation as part of an ongoing custody dispute, although it does not allow grandparents to initiate an independent action for visitation. *See Moore v. Moore*, 89 N.C. App. 351, 353, 365 S.E.2d 662, 663 (1988); (2) N.C. Gen. Stat. § 50-13.2A permits a biological grandparent to request visitation with the grandchild if the grandchild is adopted by a stepparent or relative of the child, provided the child and grandparent have a substantial relationship; and (3) N.C. Gen. Stat. § 50-13.5(j) allows grandparents to seek visitation by intervening in an existing custody case and alleging facts sufficient to support a showing of a substantial change of circumstances affecting the welfare of the child since the original order was entered and that modification is in the best interest of the child.

"Th[ese] situations do not include that of initiating suit against parents whose family is intact and where no custody proceeding is ongoing." *McIntyre*, 341 N.C. at 635, 461 S.E.2d at 750. Thus, under the grandparent visitation statutes, "a grandparent's right to visitation arises either in the context of an ongoing custody proceeding or where the minor child is in the custody of a stepparent or a relative." *Id.* at 634, 461 S.E.2d at 749.

"[W]here one parent is deceased, the surviving parent has a natural and legal right to custody and control of the minor children." *McDuffie v. Mitchell*, 155 N.C. App. 587, 589, 573 S.E.2d 606, 607-08 (2002) (citation omitted). "That maxim was no less true when the sole surviving parent was the non-custodial parent of the children[.]" *Rivera*, 824 S.E.2d at 168-69.

Here, when Plaintiffs filed their complaint, there was no ongoing custody proceeding as Defendant had a natural and legal right to custody and control of Abby upon Christopher's death, *see McDuffie*, 155 N.C. App. at 589, 573 S.E.2d at 607-08, and Abby had not been adopted by a stepparent or relative. Thus, Plaintiffs lacked standing to bring a claim for visitation under any of the grandparent visitation statutes. However, as Plaintiffs stress in their brief, whether there was an ongoing custody proceeding or whether Abby "was living in an intact family when this action was filed" are "irrelevant" considerations as Plaintiffs were not seeking visitation

under any of the grandparent visitation statutes, but instead brought their action for custody under N.C. Gen. Stat. § 50-13.1(a).

In their complaint, Plaintiffs alleged that Defendant was unfit and had acted inconsistently with her parental status. Plaintiffs thus had standing to bring this custody action pursuant to N.C. Gen. Stat. § 50-13.1(a). *See Eakett* at 553, 579 S.E.2d at 489; *Rodriguez v. Rodriguez*, 211 N.C. App. 267, 274, 710 S.E.2d 235, 240 (2011). Nevertheless, even when grandparents have standing to bring a custody action, to gain custody they must still overcome a parent's "constitutionally-protected paramount right . . . to custody, care, and control of [the child.]" *Petersen*, 337 N.C. at 403-04, 445 S.E.2d at 905. "While the best interest of the child standard would apply in custody disputes between two parents, in a dispute between parents and grandparents there must first be a finding that the parent is unfit." *Sharp v. Sharp*, 124 N.C. App. 357, 361, 477 S.E.2d 258, 260 (1996) (citation omitted).

"If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the 'best interest of the child' standard in a custody dispute with a nonparent would offend the Due Process Clause." *Price*, 346 N.C. at 79, 484 S.E.2d at 534. Accordingly, only after the trial court has determined that the parent has acted in a manner inconsistent with his or her protected status may the trial court apply the best interest of the child test to determine custody. *Seyboth v. Seyboth*, 147 N.C. App. 63, 67, 554 S.E.2d 378, 381

(2001). If, however, the grandparent is not able to show that the parent has lost his or her protected status, the custody claim against the parent must be dismissed. *See Owenby*, 357 N.C. at 148, 579 S.E.2d at 268 (reinstating the trial court's order dismissing grandparent's custody action where grandparent "failed to carry her burden of demonstrating that defendant forfeited his protected status").

In this case, based upon its extensive findings of fact, the trial court concluded, in relevant part:

> 7. Defendant is not an unfit parent.
>
> 8. Defendant has not abandoned her daughter.
>
> 9. That the minor child has not been neglected by Defendant.
>
> 10. That Defendant has not acted in a manner inconsistent with her constitutionally protected right as a parent.
>
> 11. That Defendant is a fit and proper person to have full physical and legal custody of the minor child.

Although the trial court initially concluded, "6. That the court is not considering the best interest of the minor child standard at this posture of the case[,]" the trial court's following conclusions plainly indicate otherwise:

> 12. That it is in the best interest of the minor child to place full physical and legal custody with Defendant, Stephanie Jones.
>
> 13. That Plaintiffs are fit and proper person[s] to have reasonable visitation with the minor child.
>
> 14. That the Court has the authority to grant Plaintiffs reasonable visitation.

> 15. That it is in the best interest of the minor child to have reasonable visitation with Plaintiffs, Wanda Graham and George Graham.

As Defendant remained entitled to constitutional protection of her parental status upon Christopher's death, *Rivera*, 824 S.E.2d at 168-69, and the trial court found that Defendant was not an unfit parent and had not acted inconsistently with her constitutionally-protected status as a parent, the trial court's application of the "best interest of the child" standard before concluding that Plaintiff was entitled to full legal and physical custody of Abby "offend[s] the Due Process Clause." *Price*, 346 N.C. at 79, 484 S.E.2d at 534. Moreover, as the trial court found that Defendant was not an unfit parent and had not acted inconsistently with her constitutionally-protected status as a parent, the trial court's "inquiry into [Plaintiffs'] fitness for purposes of custody was irrelevant[,]" *Petersen*, 337 N.C. at 404, 445 S.E.2d at 905; the trial court erred in concluding that it had the authority to grant Plaintiffs visitation; and the trial court's application of the "best interest of the child" standard to grant Plaintiffs visitation again "offend[s] the Due Process Clause." *Id*.

As the trial court found that Defendant was not an unfit parent and had not acted inconsistently with her constitutionally protected status as a parent, there was no basis for the trial court to grant visitation to the Plaintiffs. *See Rodriguez*, 211 N.C. App. at 279, 710 S.E.2d at 244 (in a custody action brought by grandparents

pursuant to N.C. Gen. Stat. § 50-13.1, "there was no basis for the trial court to grant visitation to the [grandparents]" where "defendant did not act inconsistently with her status as a parent, and the trial court did not make a finding that defendant was unfit").

### III.  Conclusion

For the reasons articulated above, we reverse the Custody Order and remand the case to the trial court with instructions to dismiss Plaintiffs' action and dissolve the Ex Parte Order and the Custody Order.  *See Owenby*, 357 N.C. at 148, 579 S.E.2d at 268 (reinstating trial court's order dismissing plaintiff's custody action and dissolving all orders previously entered).

REVERSED AND REMANDED.

Judges BRYANT and HAMPSON concur.